# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| CLARENCE A. SMART, JR., | : | |
| Plaintiff, | : | |
| | | Case No. 3:14cv00392 |
| vs. | : | |
| | | District Judge Thomas M. Rose |
| CAROLYN W. COLVIN, | : | Chief Magistrate Judge Sharon L. Ovington |
| Acting Commissioner of the Social | | |
| Security Administration, | : | |
| Defendant. | : | |

## REPORT AND RECOMMENDATIONS[1]

### I.   Introduction

Plaintiff Clarence A. Smart, Jr. brings this case challenging the Social Security Administration's second denial of his applications for Disability Insurance Benefits and Supplemental Security Income.  He asserts here, as he did before the Administration, that he has been under a disability – starting on April 1, 2006 – due to back pain and neck numbness.  (Doc. #9, *PageID* #1273).  Two different Administrative Law Judges have reviewed Plaintiff's applications and evidence; each denied his applications.  In the present case, Plaintiff challenges the most recent denial, which (like its predecessor) concluded that Plaintiff is not under a benefits-qualifying disability.

---

[1] Attached hereto is NOTICE to the parties regarding objections to this Report and Recommendations.

The case is presently before the Court upon Plaintiff's Statement of Errors (Doc. #9), the Commissioner's Memorandum in Opposition (Doc. #12), the administrative record (Docs. #s 7 and 8), and the record as a whole.

## II.     Background

### A.     Procedural History

In broad strokes, Plaintiff's procedural history includes a first round of administrative proceedings ending in a final non-disability decision by Administrative Law Judge Janice M. Bruning.  ALJ Bruning found that Plaintiff could perform a sedentary work with certain limitations.  She found for instance:

> [He] can lift no more than a maximum of 10 pounds at a time; occasionally lift and/or carry articles like docket files, ledgers, and small tools; stand/walk for a total of no more than 2 hours in a normal 8-hour workday ....

(Doc. #7, *PageID* #59).

Plaintiff challenged ALJ Bruning's decision in this Court, 3:12cv00065.  In December 2012, U.S. District Judge Timothy S. Black found that ALJ Bruning erred by not addressing "why Dr. Catanzarite's [disability] opinion should not be given controlling weight or even deference, as required by the regulations, 20 C.F.R. §404.1527(d)(2)." (Doc. #8, *PageID*# 729).  Judge Black therefore reversed ALJ Bruning's decision and remanded the case with directions to the Commissioner to "(1) reconsider Dr. Catanzarite's findings as a treating physician, and address the requirements of 20 C.F.R. §404.1527(d)(2) if rejecting such findings, (2) obtain testimony from a medical expert

regarding Plaintiffs severe impairments; and (3) reassess Plaintiff's RFC [residual functional capacity]." (Doc. #8, *PageID#* 731).

On remand, ALJ Amelia G. Lombardo received additional evidence including further testimony from Plaintiff and testimony from an orthopedist, Dr. Brahms, who reviewed the medical evidence of record. Dr. Brahms testified, in part, that Plaintiff could perform a reduced range of light work.

Plaintiff presently challenges ALJ Lombardo's decision on remand that he is not was not under a benefits-qualifying disability. *Id*. at 612-25.

### B. Plaintiff's Vocational Background and Testimony

Plaintiff was 51 years old when ALJ Lombardo issued her decision. This placed him within the Social Security regulation's definition of a "closely approaching advanced age." His past relevant employment included work as an inspector for a tool and dye maker, a manager for an automotive store, a painter and salesman at a car dealership, and a setter for an adhesive company.

At his second administrative hearing, Plaintiff testified that the most serious physical problems he has are in his back, neck, shoulder, and knees. (Doc. #8, *PageID* #654). The worse of these problems is his neck. He had received injections that temporarily helped these neck issues. His prescription pain medications, including for instance Gabapentin, help his pain "somewhat" but cause him dizziness and insomnia. *Id*. at 655. He sleeps between 3 to 5 hours at night and does not often sleep during the day. On a 0-to-10 scale,

his pain levels are 8 or 9 without pain medications, and 5 or 6 with pain medications.

Plaintiff estimated that he could walk one-half a block, stand for 20-30 minutes, and sit for 20-30 minutes. He has problems with his arms, hands and fingers. He has trouble with his shoulders and cannot lift his left arm. He explained that he cannot wash his own hair. He has "[n]o grip" but he might be able to lift a gallon of milk, although it's tough some days. *Id*. at 656. Plaintiff further testified that he has problems turning his neck or looking up and down.

Plaintiff's heel and half of his foot are numb and he has about 25% ankle movement. He was involved in a motorcycle accident in June 2011 in which he suffered a foot injury that became infected. He was hospitalized for 7 days.

During a typical day, he gets up and takes a shower and watches television. His daughters do his laundry, and he cooks "once in a while." *Id*. at 658. He does not have any hobbies.

    C.    <u>**Medical Evidence**</u>

Judge Black's previous description, in December 2012, of the medical records is incorporated herein by reference. (Doc. #8*,* PageID# 719-26).

One central opinion at issue on remand was provided by Plaintiff's primary care physician, Dr. Catanzarite. Plaintiff began seeing with Dr. Catanzarite in September 2007.. (Doc. #7, *PageID* #322). On August 5, 2009, Dr. Catanzarite completed a basic medical form. *Id*. at 579-80. She reported that Plaintiff had left-shoulder impingement. He was

treated for neck pain caused by cervical disc disease and his status was post-cervical surgery in 2005. He had left-shoulder pain, hypertension, and right-knee pain after undergoing a meniscectomy. He had also had surgery involving a bilateral carpal-tunnel release in 2008. His condition was good but stable.

Dr. Catanzarite opined that Plaintiff's ability to stand, walk, and sit was affected but Dr. Catanzarite did not indicate how. She believed that Plaintiff was moderately limited in his ability to push/pull, bend, and handle. And, Dr. Catanzarite concluded that Plaintiff was unemployable for 12 months or more. *Id.* at 580.

In February 2013, Dr. Catanzarite wrote a brief letter to Plaintiff's attorney stating that Plaintiff "brought me a form he asked me to complete for his disability evaluation. The care for his cervical spondylosis, and chronic neck and arm pain has been managed by orthopedic specialists and pain management. Please see my attached note from his most recent visits for my evaluation of his current state." (Doc. #8, *PageID* #1105). Dr. Catanzarite's most recent note documented Plaintiff's report of increased pain, "[h]is neck pain is always worse in the cold, but the pain is hard to bear now. He can't sit for more than 20 minutes because of the pain, which radiates into his shoulders. He frequently drops things as well. Pain also radiates to his low back." *Id*. at 1109.

During ALJ Lombardo's hearing, Dr. Brahms testified about his review of the medical records, including medical records dated before and after ALJ Bruning's decision. Dr. Brahms opined that Plaintiff is limited to light activity, and "[h]e should avoid

5

repetitive work above the shoulder level, only occasional work above shoulder level. He should avoid repetitive kneeling, stooping, that should be done only occasionally. In so far as fine movements are concerned, in view of the fact that his surgery, carpal tunnel surgery has been done there is not limitation on that. He should avoid ladders, ropes and scaffolds....." *Id*. at 646.

Further detailed description of the medical records and opinions is unnecessary because the undersigned has reviewed the entire administrative record and because Judge Black, ALJ Lombardo, and Plaintiff's counsel have accurately summarized the record. The Commissioner, moreover, refers to ALJ's recitation of the relevant evidence and to Plaintiff's factual summary. (Doc. #12, *PageID* #1301).

**III.    "Disability" Defined and Two Administrative Decisions**

To be eligible for SSI or DIB a claimant must be under a "disability" within the definition of the Social Security Act. *See* 42 U.S.C. §§ 423(a), (d), 1382c(a). The definition of the term "disability" is essentially the same for both DIB and SSI. *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986). Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *See Bowen*, 476 U.S. at 469-70 (1986).

ALJ Lombardo evaluated Plaintiff's application and the evidence of record under

the 5-step sequential evaluation mandated by Social Security regulation. *See* 20 C.F.R. §404.1520(a)(4); *see also Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). She reached findings favorable to Plaintiff at steps 1 and 2. The ALJ therefore proceeded to step 3 where she concluded that Plaintiff did not have an impairment or combination of impairment that constituted a disability under the Commissioner's Listing of Impairments. *See* Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1.

Continuing to step 4, ALJ Lombardo assessed Plaintiff's residual functional capacity – *i.e.*, the most he could do in a work setting despite his impairments. *See* 20 C.F.R. § 416.945(a); *see also* Social Security Ruling 96–8p, 1996 WL 374184 (July 2, 1996). The ALJ concluded that Plaintiff could perform a reduced range of light work with the following limitations:

> no lifting above ten pounds; no ladders, ropes, or scaffolds, no exposure to unprotected heights or dangerous machinery; occasional use of ramps and stairs; occasional balancing, stooping, and crawling; and occasional overhead reaching bilaterally; frequent fingering and handling bilaterally; and the allowance of a one to two minute change of position between sitting and standing every 30 minutes.

(Doc. #8, *PageID* #618). The ALJ also found at step 4 that Plaintiff could not perform his past relevant work.

At step 5, the ALJ determined that Plaintiff could perform a significant number of unskilled, light exertional jobs that are available in the national economy. This, in the end, is what led her to ultimately conclude that Plaintiff was not under a benefits-qualifying disability. *Id.* at 624-25.

## IV. Judicial Review

The Social Security Administration's determination of disability – here, embodied in ALJ Lombardo's decision – is subject to judicial review along two lines: "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see Bowen v. Comm'r of Soc. Sec*., 478 F.3d 742, 745-46 (6th Cir. 2007). Reviewing the ALJ's legal criteria for correctness may result in reversal even if the record contains substantial evidence supporting the ALJ's factual findings. *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014); *Rogers*, 486 F.3d at 241.

The substantial-evidence review does not ask whether the Court agrees or disagrees with the ALJ's factual findings or whether the administrative record contains evidence contrary to those factual findings. *Rogers*, 486 F.3d at 241; *see Her v. Comm'r of Social. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999). Instead, substantial evidence supports the ALJ's factual findings when "a 'reasonable mind might accept the relevant evidence as adequate to support a conclusion.'" *Blakley*, 581 F.3d at 406 (quoting *Warner v. Comm'r of Social Sec.*, 375 F.3d 387, 390 (6th Cir. 2004)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance..." *Rogers*, 486 F.3d at 241; *see Gentry*, 471 F3d at 722.

## V. Discussion

Plaintiff argues that ALJ Lombardo erred in rejecting his treating physician Dr.

Catanzarite's opinions and in relying on the opinions of Dr. Brahms and record-reviewer Dr. Cho.  Plaintiff maintains that Dr. Catanzarite's opinions were entitled to controlling weight under the regulations and Sixth Circuit case law, and substantial evidence – indeed, overwhelming objective and clinical medical evidence (as Plaintiff characterizes it) – supports Dr. Catanzarite's opinions.  Plaintiff further contends that even if Dr. Catanzarite's opinions were not entitled to controlling weight, her opinions were certainly entitled to deference.

The Commissioner argues that the ALJ reasonably discounted Dr. Catanzarite's opinions, particularly her statement that Plaintiff was "unemployable" and would remain so for 12 moths or more.  The Commissioner maintains that the ALJ reasonably placed significant weight on the opinions of Drs. Cho and Brahms.  And, the Commissioner concludes that the ALJ provided good reasons for giving little weight to Dr. Catanzarite's opinion that Plaintiff was unemployable.

Social security regulations recognize several different types of medical sources: treating physicians and psychologists, nontreating yet examining physicians and psychologists, and nontreating/record-reviewing physicians and psychologists.  *Gayheart v. Comm'r Social Sec.*, 710 F.3d 365, 375 (6th Cir. 2013).

> As a general matter, an opinion from a medical source who has examined a claimant is given more weight than that from a source who has not performed an examination (a "nonexamining source"), and an opinion from a medical source who regularly treats the claimant (a "treating source") is afforded more weight than that from a source who has examined the claimant but does not have an ongoing treatment relationship (a

"nontreating source"). In other words, "[t]he regulations provide progressively more rigorous tests for weighing opinions as the ties between the source of the opinion and the individual become weaker." Soc. Sec. Rul. No. 96–6p, 1996 WL 374180, at *2 (Soc. Sec. Admin. July 2, 1996).

*Gayheart*, 710 F.3d at 375 (citations omitted). To effect this hierarchy, the Regulations adopt the treating physician rule. The rule is straightforward:

> Treating-source opinions must be given "controlling weight" if two conditions are met: (1) the opinion is "well supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) the opinion "is not inconsistent with other substantial evidence in [a claimant's] case record."

*Gayheart*, 710 F.3d at 376 (citation omitted); *see Gentry*, 741 F.3d at 723. If both conditions do not exist, the ALJ's review must continue:

> When the treating physician's opinion is not controlling, the ALJ, in determining how much weight is appropriate, must consider a host of factors, including the length, frequency, nature, and extent of the treatment relationship; the supportability and consistency of the physician's conclusions; the specialization of the physician; and any other relevant factors.

*Rogers*, 486 F.3d at 242 (citing *Wilson*, 378 F.3d at 544). The ALJ must provide "good reasons" for the weight placed on a treating medical source's opinions. 20 C.F.R. §404.1527(c)(2); *see Smith v. Comm'r Social Sec.*, 482 F.3d 873, 875 (6th Cir. 2007). The good-reasons mandate is satisfied when the ALJ has provided "sufficient reasons for the weight given to the treating source's medical opinions, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Wilson*, 378 F.3d at 544 (quoting Soc. Sec. Ruling 96-20, 1996 WL 374188 at *5

(1996)).

> "The requirement of reason-giving exists, in part, to let claimants understand the disposition of their cases," particularly in situations where a claimant knows that his physician has deemed him disabled and therefore "might be especially bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied." The requirement also ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule.

*Wilson*, 378 F.3d at 544 (internal citation omitted).

In the present case, ALJ Lombardo's reasons for discounting Dr. Catanzarite's opinions satisfy the good-reasons requirement.  ALJ Lombardo assigned little weight to Dr. Catanzarite's August 2009 opinion because it was inconsistent with her own minimal findings.  (Doc. #8, *PageID* #621-22).  Although Dr. Catanzarite believed Plaintiff's abilities to sit/walk were "affected," Dr. Catanzarite did not offer an opinion about any specific limitation Plaintiff had in his sit/stand abilities even though the form she completed specifically asked, for example, "how many hour in an 8-hour workday can patient stand/walk."  *Id*. at 580.  Dr. Catanzarite similarly neglected to include a specific limitation about Plaintiff's sitting ability, and she did not indicate how many pounds Plaintiff could lift/carry, even though the form she completed asked her to do so.  *Id*.
The ALJ correctly recognized that Dr. Catanzarite believed that Plaintiff had  "moderate" postural limitations.  Dr. Catanzarite found Plaintiff moderately limited in his ability to engage in pushing/pulling, bending, and handling.  *Id*.  She found that Plaintiff was not significantly limited in his reaching ability and had no limitation in his abilities to

repetitively move his feet and to see, hear, and speak.  Dr. Catanzarite left completely blank the space provided in the form to identify her observations and/or medical evidence that led to her opinions about Plaintiff's physical functional limitations and postural limitations. Given Dr. Catanzarite's minimal findings and the absence of specific information or an explanation in support of her opinions, it was reasonable for the ALJ to view Dr. Catanzarite as "minimal" and to rely on this as a ground for discounting Dr. Catanzarite's opinion that Plaintiff's was unemployable for 12 months or more.  The ALJ also correctly reasoned that Dr. Catanzarite is not an orthopedic doctor regarding the assessment of physical functional abilities.  Lack of specialization was an appropriate reason to discount Dr. Catanzarite's opinion.  *See* 20 C.F.R. §404.1527(c)(5).

As to Dr. Catanzarite's brief letter in February 2013, the ALJ reasonably observed that Dr. Catanzarite "correctly points out that [Plaintiff's] neck conditions were treated by orthopedic doctors."  (Doc. #8, PageID #622).  Perhaps this is why Dr. Catanzarite did not offer her opinion about Plaintiff's lifting abilities.  Regardless, it appears that by February 2013, at the latest, Dr. Catanzarite thought it more appropriate for Plaintiff's orthopedic specialists to comment on his neck limitations.  This reasonably tends to reflect poorly on the validity of Dr. Catanzarite's previous opinion that Plaintiff was unemployable for 12 months or more.

In addition, when considering Dr. Catanzarite's February 2013 letter, the ALJ examined treatment notes and Plaintiff's 2013 MRI, which – as the ALJ indicated – "showed tendinitis but no rotator cuff injury or injury to the shoulder itself, according to

orthopedic specialist, Dr. Brahms." *Id*. The record supports this. *See* Doc. #8, *PageID* #s 645, 1250-51.

Plaintiff points out that Dr. Catanzarite's treatment notes show he had positive impingement sign on the left arm, decreased range of motion of his neck, decreased grip, spasm, and decreased range of motion bilateral shoulders. *See PageID* at 328, 420-422, 593, 595). Plaintiff maintains that these clinical findings support Dr. Catanzarite's opinion of disability. However, ALJ Lombardo considered additional objective findings. For example, ALJ Lombardo referred to the MRI of lumbar spine in February 2009 which showed no disc herniation or stenosis, contemporaneous MRI of the right knee showing moderate joint effusion but no meniscal injury, and treatment notes showing that Plaintiff has done well after carpal tunnel-release surgery. *See PageID* #615 (citing *PageID* #s 450, 452, 491, 529, 539). As long as this and other similar substantial evidence supports the ALJ's decision, which it does in the present case, deference must be allotted to the ALJ's decision. *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007) ("If the Commissioner's decision is supported by substantial evidence, we must defer to that decision even if there is substantial evidence in the record that would have supported an opposite conclusion." (citations and internal punctuation omitted)).

Turning to Dr. Brahms' opinions, Plaintiff acknowledges that the ALJ recognized Dr. Brahms as an orthopedist. Plaintiff argues, however, that the ALJ erred by not weighing Dr. Brahms' opinions under the other factors required by the regulations. The ALJ did not err in the present case by placing more weight on Dr. Brahms' opinions based

on the specialization factor. *See* 20 C.F.R. §404.1527(c)(5). The lack of specific information or explanation in the form Dr. Catanzarite completed, and in light of Dr. Catanzarite's later reference to Plaintiff's treatment by "orthopedic doctors" (Doc. #8, PageID #622), it was reasonable for the ALJ to elevate the significance of Dr. Brahms' orthopedic specialization over the lack of Dr. Catanzarite's orthopedic specialization as to Plaintiff's physical work limitations. This is not to say that it is always reasonable for an ALJ to place such significance on a medical source's specialization. It is instead to find that, in the present case, substantial evidence supports the ALJ's application of the specialization factor to place greater weight placed on Dr. Brahms' opinion than on Dr. Catanzarite's opinions.

Plaintiff further argues that the ALJ erred by not applying the correct legal criteria to the opinions of Dr. Cho. This argument lacks merit. The ALJ assigned "significant" weight to both Dr. Cho and Dr. Brahms' opinions because "[t]hey are remarkably similar despite being six and one-half years apart." (Doc. 8, *PageID* #620). Given the shortcomings of Dr. Catanzarite's opinions, discussed above, and the weight the ALJ reasonably placed on Dr. Brahms' opinion, it was not error for the ALJ to rely on the consistency between Dr. Cho's and Dr. Brahms' opinions. In addition, Dr. Cho supported her opinions with references to particular evidence. *Id*. at 311-12. Dr. Catanzarite did not. *Id*. at 579-80.

Accordingly, Plaintiff's Statement of Errors lacks merit.

## IT IS THEREFORE RECOMMENDED THAT:

1. The Commissioner's non-disability finding be affirmed; and

2. The case be terminated on the docket of this Court.


November 23, 2015

s/Sharon L. Ovington
Sharon L. Ovington
Chief United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendations.  Pursuant to Fed. R. Civ. P. 6(d), this period is extended to **SEVENTEEN** days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F).  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947, 949-50 (6th Cir. 1981).